UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NYTDA, Inc. a/k/a New York Trucking and
Delivery Association,                                    MEMORANDUM & ORDER

                 Plaintiff,                           11-CV-1836 (NGG) (RER)

               -against-

CITY OF NEW YORK, et al.,

               Defendants.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

This case concerns a dispute over the administration of the City of New York's Stipulated Fine Program, by which owners of delivery and service vehicle fleets can pay reduced fines if they do not contest their vehicles' alleged violations. Plaintiff New York Trucking and Delivery Association ("NYTDA") alleges that the program was administered in bad faith for a period between 2006 and 2010, leading to a windfall for Defendant City. (Compl. (Dkt. 1).) Plaintiff's ability to serve as class representative was this thrown into question after the court ruled that Plaintiff lacked standing to bring certain claims in this action on behalf of its members. (Mem. & Order (Dkt. 87).)

Lockman, Inc., an NYTDA member, now seeks leave to intervene in this action. (Oct. 25, 2013, Mot. to Intervene (Dkt. 91).) Lockman is a security systems company that owns and operates commercial vehicles in New York City. (Lockman, Inc.'s Mem. in Supp. of Mot. to Intervene ("Mem. in Supp.") (Dkt. 92) at 4.) If allowed to intervene, it anticipates stepping into the place left by NYTDA and pursuing class certification. (Compl. in Intervention, Ex. A to Mot. to Intervene (Dkt. 91-1) ¶¶ 121-130.) Lockman's motion to intervene is GRANTED.

1

## I. BACKGROUND

### A. Facts

Plaintiff, an association of delivery companies based in New York City, brought this lawsuit to challenge the City's administration of its Stipulated Fine Program. The New York Trucking and Delivery Association (NYTDA) administers the program on behalf of its members. (Compl. ¶¶ 14-17, 22.) Under the program, vehicle owners agree not to contest fines received by their vehicles in return for paying a fraction of the ticket price. (Compl. ¶¶ 64, 67.) That fraction is based on the percentage of tickets that are typically dismissed if contested. (Id. ¶¶ 67-68.) In its class action complaint, NYTDA alleges that the City's traffic enforcement agents routinely ticketed commercial vehicles illegally from May 2006 to October 2010. (Id. ¶ 3.) In particular, vehicles were ticketed for "traffic lane" violations, when they should not have been ticketed or should have been ticketed only for double parking, a violation with a stipulated fine of $ 0.00. (Lockman Inc.'s Mem. in Supp. of Mot. to Intervene ("Mem. in Supp.") (Dkt. 92) at 2-3.)

### B. Procedural History

Plaintiff NYTDA originally brought its Complaint on behalf of itself and its members on April 14, 2011. (Compl.) Defendants moved to dismiss the Complaint, but were rebuffed. (Mot. to Dismiss (Dkt. 15); Nov. 10, 2011, Order (Dkt. 27).) Defendants then moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on October 9, 2012, arguing that NYTDA lacked standing to sue. (Dkt. 76.)

On August 27, 2013, the court granted in part and denied in part Defendants' motion. (Mem. & Order.) The court recognized NYTDA's standing to bring suit for its own damages in the form of lost profits and expenses related to the Stipulated Fine Program and subsequent lawsuit. (Id. at 14.) However, it held that NYTDA could not use the grants of power of attorney

from its members to assert standing on their behalf. (Id. at 9-13.) This judgment precipitated potential intervenor Lockman, Inc.'s present motion. (Mem. in Supp. at 3.)

## II. LEGAL STANDARD

Lockman seeks to intervene as of right under Federal Rule of Civil Procedure 24(a). Despite the late date, it argues that it was not on notice that NYTDA could not adequately represent it until the court's August 27, 2013, ruling. (Id. at 8.) Lockman argues that it has a clearly cognizable interest that is not now adequately protected. (Id. at 9-11.)

Federal Rule of Civil Procedure 24(a)(2) requires courts to permit anyone to intervene on timely motion who: "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede movant's ability to protect its interest, unless existing parties adequately represent that interest." To intervene as of right, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." New York News, Inc. v. Kheel, 972 F.2d 482, 485-88 (2d Cir. 1992). "Failure to satisfy any one of these requirements is sufficient grounds to deny the application." Id. (citations omitted).

In the alternative, Lockman seeks intervention by permission under Rule 24(b), which states in pertinent part that "on timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." An application for permissive intervention requires the court to consider "substantially the same factors" as for an application for intervention of right. See In re Bank of N.Y. Derivative Litigation, 320 F.3d 291, 300 & n.5 (2d Cir. 2003). Permissive intervention, however, is committed to the discretion of the trial court. See U.S. Postal Serv. v. Brennan, 579 F.2d 188,

3

191 (2d Cir. 1978). In exercising its discretion, the court should consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. See H.L. Hayden Co. of N.Y., Inc. v. Siemens Med., 797 F.2d 85, 89 (2d Cir. 1986); Ass'n of Conn. Lobbyists LLC v. Garfield, No. 06-CV-1030 (SRU), 2007 WL 613856, at *2 (D. Conn. Feb. 27, 2007).

### III. DISCUSSION

Lockman argues that its application is timely under Rule 24(a)(2), and alternately that it should be allowed in the court's discretion under Rule 24(b). (Mem. in Supp. at 7-9, 11.) Defendants respond that Lockman could have joined the suit at an earlier date, rather than being content to rely on an organization whose claim to standing was shaky. (Defs. Mem. of Law in Opp'n to Lockman's Mot. to Intervene ("Opp'n") (Dkt. 93) at 3-5.) The City further argues that Lockman has no legal interest in a refund of its ticket fees because it signed a waiver of its right to such a refund, or to challenge the City's fine decisions when it joined the Stipulated Fine Program. (Id. at 7.) Because such waiver was not fraudulently induced, it is not validly rescinded. (Id. at 13.)

#### A. Timeliness

The first issue for the court to consider is whether the motion is out of time. Intervention as of right is only available if the motion is timely. Fed. R. Civ. Pro. 24(a). The Second Circuit has held that determining whether an issue is timely under Rule 24(a) is within the discretion of the District Court. Among the factors that a district court should consider are: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to

existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994) (citation omitted). Even if intervention as of right is untimely, intervention may still be permitted under Rule 24(b).

Under what might be called normal circumstances, Lockman's delay of almost two and a half years in filing its Motion to Intervene would be considered far too long. S.E.C. v. Callahan, No. 12-CV-1065 (ADS) (AKT), 2014 WL 860041, at *10 (E.D.N.Y. Mar. 5, 2014) ( a delay of a year and five months is too long) (citing United States v. Simpson Borough Place Corp., No. 01-CV-693 (DLI) (VVP), 2007 WL 2581888, at *3 (E.D.N.Y. Sept. 5, 2007).)

Moreover, the harm that Lockman complains of stopped on October 1, 2010. (Compl. ¶ 3.) The statutes of limitations for a Section 1983 action is three years, putting this motion to intervene, filed on October 25, 2013, just beyond its reach. See Pearl v. City of Long Beach, 296 F.3d 79, 79 (2d Cir. 2002).

This case, however, is not a typical case. It involves a class action in which the class representative has lost standing to represent the class only after representative status had been granted. In such cases, special rules may apply to prevent class action from becoming a trap for class members seeking to pursue their rights in good faith.

The Supreme Court in American Pipe held that "commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status" Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 553 (1974). The Court reasoned that the opposite rule would incentivize duplicate motions to intervene at the outset of litigation, lest a class fail to be certified, which would remove much of the "efficiency and economy" that is the purpose of class

proceedings. Id. The Court extended this reasoning to class members filing independent actions, further explaining that otherwise "class members would not be able to rely on the existence of the suit to protect their rights," and would be compelled to intervene or take other action within the statute of limitations. Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 350 (1983).

This case stands in a different posture than American Pipe and Crown. The class was certified, but its representative was later found to lack standing to bring certain claims. A total lack of standing cannot be cured by intervention because the court lacks jurisdiction over original lawsuit. Disability Advocates, Inc., v. N.Y. Coalition for Quality Assisted Living, Inc., 675 F.3d 149, 160 (2d Cir. 2012). But Plaintiff retains standing on some claims and the court retains jurisdiction. The courts in this Circuit remain split regarding whether to allow tolling of the statute of limitations when a party seeks to intervene after a class representative was found not to have standing to represent the class's claims. See Monroe Cnty. Employees' Ret. Sys. v. YPF Sociedad Anonima, 980 F. Supp. 2d 487, 488-89 (S.D.N.Y. 2013) (noting split and collecting cases).

The Second Circuit's recent holding in IndyMac that American Pipe tolling did not apply to tolling under Section 13 of the Securities Act, does not answer the question here. See Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 109 (2d Cir. 2013) cert. granted, 134 S. Ct. 1515 (2014). Section of 13 is not a statute of limitations but a statute of repose, which creates an affirmative right to be free of litigation after a certain time. By contrast, the statue of limitations under Section 1983 is derived from case law directing that "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" Pearl, 296 F.3d at 79 (citing Owens v. Okure, 288 U.S. 235, 249-50 (1989)).

6

The court is thus left with the conflicting case law predating IndyMac. These precedents instruct the court to take into account "all of the circumstances," including when intervenors discovered there was a need to intervene and the procedural posture of the case. Turkmen v. Ashcroft, No. 02-CV-2307 (JG), 2010 WL 3398965 (E.D.N.Y. June 30, 2010) report and recommendation adopted, No. 02-CV-2307 (JG) (SMG), 2010 WL 3398968 (E.D.N.Y. Aug. 26, 2010)).

This case meets Rule 24(a)'s timeliness requirements. Lockman had notice of its interests from the beginning of the suit, having discovered the discrepancies in the City's accounting along with other participants in the Stipulated Fine Program. (Compl. in Intervention ¶ 73.) But it did not have notice of a need to intervene until after the court's August 28, 2013 ruling that NYTDA lacked standing to represent those interests. Lockman raises no new issues and the City has presumably prepared its case. On the other hand, the prejudice to Lockman if the motion is denied would be considerable because NYTDA can no longer represent Lockman's claims. Finally, the court must consider any other circumstances militating for or against tolling the statute. Prior to the court's previous ruling, Lockman's interests could have been adequately represented by NYTDA. After the court's ruling, NYTDA's interests were still represented, but the interests of its members, including Lockman, were not. This change, combined with the fact that Lockman filed its motion only three days beyond the date that would have represented a deadline if the statute had been tolled offer good reason to consider Lockman's motion timely according to the standards of Rule 24(a).

Since the court considers Lockman's motion timely for purposes of Rule 24(a) intervention as of right, the intervention would also be timely for purposes of permissive intervention under Rule 24(b).

## B. Interest in the Action

Defendants further argue that Lockman's motion should be denied because Lockman lacks a legally protectable interest. (Opp'n at 8.) That is because Lockman, like all class members, signed a release stating that it would not challenge the City's tickets, "waiv[ing] the right to contest all notice of violation" under the Department of Finance's Rule. (Id.)

In order to meet under Rule 24(a)(2)'s interest requirement, a potential intervenor must have a "cognizable" interest. To be cognizable, an interest "it must be 'direct, substantial, and legally protectable.'" Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d 469, 473 (2d Cir. 2010) (citing Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990)). Defendants argue that Lockman's waiver has essentially destroyed that interest. (Mem. in Opp'n at 8.) Lockman responds that the waiver was never meant to cover a situation in which the City essentially cheated with regard to the administration of the program.

### 1. The Contract with the City

The agreement in question is signed by NYTDA, which had Specific Power of Attorney for Lockman. (New York Delivery Solutions Enrollment Agreement, Ex. A and Specific Power of Attorney, Ex. B to Meyers Aff. in Opp'n to Mot. to Intervene (Dkts. 94-1, 94-2).) It states that:

> For any summonses issued to an enrolled vehicle, the Company waives all rights to a hearing, and to accept the determinations as final. The summonses shall be deemed finally adjudicated and may not be challenged, contested or otherwise adjudicated by any party, for any reason either administratively or in court.

Defendants argue that this provision bars Lockman's suit, and thus, it should not be allowed to intervene. (Opp'n at 8.) Lockman responds that it is not barred because the contract never contemplated the intentional misapplication of a traffic rule. (Reply at 7-8.)

8

2. Waiver

Defendants first raise the issue of waiver in their opposition brief and also introduces a number of possible responses to arguments against waiver—either based on rescission or on fraud in the inducement. (Opp'n at 12-20.) One difficulty with these arguments is that Lockman argued neither issue in its opening brief. Rather, these arguments relate to unresolved issues argued by NYTDA in relation to Defendants' motion for judgment on the pleadings. (See Pl.'s Mem. in Opp'n to Defs. Mem. of L. in Supp. of Rule 12 (c) Mot. for J. on the Pleadings ("12 (c) Opp'n") (Dkt. 76-5) at 9-18.) Indeed, Lockman's opening brief did not address waiver. Lockman's response to Defendants that it has properly pled fraud, but that it will not demonstrate that it has done so until Defendants raise the pleading rules as an affirmative defense, (Reply at 10), is equally unhelpful. On this issue, Lockman also points the court back to NYTDA's brief of last year. (Id. at 7.)

The first issue for the court to decide is whether Lockman did, in fact, waive its right to sue in a circumstance like this. If so, the question becomes whether that waiver may be rescinded either based on mutual mistake or based on Lockman's mistake coupled with some fraud by Defendant. See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

Clearly, Lockman waived its right to contest individual tickets. If, for example, a Traffic Enforcement Agent claims that a truck came to a rolling stop when the driver is sure that she stopped, that is the end of the matter. Lockman must accept and pay the stipulated fine. The central question is whether the waiver contemplated waiving Lockman's right to contest the administration of the program as a whole through a constitutional challenge.[1]

---

[1] Lockman's Complant lists three causes of action: violation of its Fourth Amendment right to be free from unlawful takings as incorporated by the Fourteenth Amendment and violation of its Fourteenth Amendment due process rights under the U.S. Constitution, violation of its right to be free from unlawful takings and right to due process under

Through their citations, Defendants analogize the waiver to a litigation settlement (Opp'n at 9-12), while Lockman and the Plaintiff analogize it to a waiver of a contractual right (Reply at 9 n.2; 12(c) Opp'n at 12). Unlike a litigation settlement, in which the rights to be waived are rights to recovery under an existing suit, and thus the scope is evident to both parties, the wavier in this case is a forward-looking waiver of the right to sue. In that sense it is closer to a waiver of the right to sue under a contract. But the rights that Lockman waived were not rights under a contract, but process rights to contest fines. Lockman brings constitutional claims, and both sides agree that the process rights it waived are constitutional rights. The question is how broad the waiver of its constitutional rights was.

As all parties were New York residents and the contract was made in New York, the waiver should be analyzed under New York state law. Waiver is "the intentional relinquishment of a known right." E. 56th Plaza, Inc. v. Abrams, 458 N.Y.S.2d 953, 955 (1983). If a party clearly waives its right to pursue a cause of action, that waiver will be binding in future actions absent exceptional circumstances. See Middle East Banking v. State Street Bank Int'l, 821 F.2d 876, 906 (2d Cir. 1987) (upholding validity of release despite claim of unilateral mistake). However, the New York courts have noted that "the meaning and coverage of a release depends on the controversy being settled . . . a 'release may not be read to cover matters which the parties did not desire or intend to dispose of.'" Gettner v. Getty Oil Co., 226 A.D.2d 501, 641 (2d Dept. 1996) (citation omitted). Intent must be "clearly established and cannot be inferred from doubtful or equivocal acts or language." E. 56th Plaza, 458 N.Y.S.2d at 955. The burden of proving that a waiver was intentional is on the party claiming waiver. Id.

---

Article I, sections 6 and 7 of the New York State Constitution, and declaratory judgment under 28 U.S. §§ 2201-02. (Compl. in Intervention ¶¶ 121-130.)

This issue in this case is analogous to the one in <u>National Helicopter</u>. <u>Nat'l Helicopter Corp. of Am. v. City of N.Y.</u>, 952 F. Supp. 1011 (S.D.N.Y. 1997) <u>aff'd in part, rev'd in part</u>, 137 F.3d 81 (2d Cir. 1998). In that case, the plaintiff heliport operator, sought to challenge conditions on a special permit issued by the City on municipal law and federal constitutional grounds. The plaintiff signed a stipulation with the City containing a waiver of right to sue that stated that it "waiv[ed] any and all claims," in relation to "any conditions relating to the special permit required under the City's Zoning Resolution for operating the Heliport." <u>Id.</u> at 1020. When it signed the waiver as part of a settlement agreement in a dispute with the City, the plaintiff knew that the City was in the process of setting conditions for its special permit, but did not know which conditions would ultimately be enacted. <u>Id.</u> Although the court interpreted the waiver to ban a challenge to the issuance of the special permit, the court held that the waiver did not ban a substantive, constitutional challenge to the conditions imposed. <u>Id.</u> It noted its reluctance to find waiver of a constitutional claim affecting the public interest, and noted further that "contract language must be especially clear to the extent that it is meant to waive claims not yet available at the time the instrument is executed." <u>Id.</u> at 1022 (citing <u>Schneider v. Revici</u>, 817 F.2d 987, 933 (2d Cir. 1987). The Second Circuit agreed, noting that "it [was] far from evident that National intended to release the City for claims regarding conditions that may have been imposed upon the special permit the City Council had not yet granted." <u>Nat'l Helicopter Corp. of Am. v. City of New York</u>, 137 F.3d 81, 88 (2d Cir. 1998)

The scope of Lockman's waiver is ambiguous. Like the plaintiff in <u>National Helicopter</u>, Lockman is unlikely to have intentionally waived its constitutional rights to the extent that Defendants claim: not only with respect to individual summons, but with respect to the fair administration of the program as a whole. Lockman gave up its right to contest individual tickets

in administrative hearings, including tickets for violations of which its vehicles would have been cleared had a hearing been held. But this concession more likely contemplates an occasional mistake by a Traffic Enforcement Agent attempting to apply the traffic laws. No evidence within the short document suggests that either side contemplated a situation in which Traffic Enforcement Agents systematically charged vehicles with the wrong violation. Instead, the language of the waiver cuts against this interpretation. See Nat'l Helicopter, 952 F. Supp. at 1022 (language of waiver must be read as a whole). The language contemplates a challenge to "any summons" and discusses waiving "all rights to a hearing." The waiver contemplates judicial as well as administrative challenges to summonses. But the nature of the challenge here is qualitatively different; it is a challenge to the City's method of administering the parking laws rather than merely a challenge to many summonses. (See Reply at 8.) To view this litigation as seeking to fix an extraordinarily large number of tickets misses the point. Plaintiffs and the potential intervenors do not merely want their tickets fixed, but also seek a declaratory judgment clarifying the unconstitutionality of Defendants' actions. (Compl. in Intervention ¶ 130.) Their interest is in relief from future violations.

Because the language of the waiver is too ambiguous to cover a declaratory judgment on constitutional grounds relating to Defendants' administration of the Stipulated Fine Program, Lockman's maintains an interest in the action and its intervention would not be futile. The court need not consider Defendants' fraud arguments as they go only to the argument that the waiver, if valid, was fraudulently procured and the court has found that the waiver does not cover the territory contemplated here.

## C. Impairment of the Interest and Adequate Representation

Because Defendants argue that Lockman does not have an interest in the action, because it has waived its right to sue, Defendants do not answer the allegation that that interest would be impaired if Lockman were denied the opportunity to intervene. However, Lockman's interests are not likely to be adequately represented if it is not allowed to intervene. NYTDA can only pursue its own claims for lost administrative costs and the costs of bringing this lawsuit. (Mem. & Order at 14.) That is a far cry from Lockman's claims regarding unconstitutional takings and for declaratory judgment. (See Compl. in Intervention ¶¶ 121-130.)

The burden of demonstrating the inadequacy of the representation of a proposed intervenor's interests by an existing party rests with the proposed intervenor. However it is generally "minimal." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972). However, the burden may be "more rigorous" if the proposed intervenor and an existing party share "the same ultimate objective." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179-80 (2d Cir. 2001). The court's previous decision renders NYTDA and Lockman's objectives distinct, allowing Lockman to meet the minimal burden of proving that its interests are not now adequately protected.

Lockman thus meets Rule 24(a)'s requirements. Its motion is timely filed and it has an interest in the action that it has not fully waiver. This interest will potentially be impaired by the outcome of this litigation—NYTDA's remaining causes of action against Defendants depend on the court determining that Defendants did in fact systemically violate the City's own rules, and the interest is not now adequately protected.

## IV. CONCLUSION

For the reasons stated above, Lockman's motion to intervene is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
      August 28, 2014

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge